# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>ANTHONY D. COOK,<br><br>         Defendant. | Case No. 14-CR-226-JPS<br><br>**ORDER** |

**1. BACKGROUND**

On September 28, 2020, Defendant filed a motion to appoint counsel to assist him in filing a motion for compassionate release. (Docket #96). Subsequently, the Court referred this matter to Federal Defender Services ("FDS") for review. (Docket #97). FDS, on Defendant's behalf, filed a motion and brief in support of Defendant's compassionate release. (Docket #101). The Government filed a response opposing Defendant's motion. (Docket #105). Thereafter, FDS filed a reply. (Docket #106). Having considered the parties' submissions, the Court is obliged to deny Defendant's motion.

**2. FACTS**

 **2.1 Defendant's Background**

Defendant is a 41-year-old inmate at Federal Correctional Institution Milan ("FCI Milan"), a low-security prison in Milan, Michigan. (Docket #101 at 4). He suffers from a number of health conditions, including severe obesity (Defendant has a BMI of 41), hypertension, and prediabetes. (*Id.*)

In early 2013, Defendant boarded a bus from Chicago to Milwaukee with plans to rob a check-cashing business with his stepfather's brother and several others. (Docket #48 at 9). After Defendant arrived, the group drove

to Community Financial in Milwaukee to execute the robbery with the help of a Community Financial employee. (*Id.* at 7–8). While in the vehicle, the men passed around a .40 caliber pistol which Defendant handled. (*Id.* at 8). When they arrived at Community Financial, two of the men, Coleman J. Ferrell and Defendant, entered the business. (*Id.*) Ferrell "pulled out a firearm and tackled the security guard . . . placed a firearm in the face of the security guard as he held him on the ground . . . [and] stated 'don't make me shoot you!'" (*Id.* at 7). Defendant, wearing a mask, worked with the employee to access the safe and steal approximately $337,100 in cash. (*Id.* at 8). Defendant fled with his coconspirators. (*Id.* at 8).

In 2015, Defendant pleaded guilty to robbery in violation of 18 U.S.C. § 1951(a) and brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). (Docket #56 at 1). This Court sentenced Defendant to a below-guidelines term of 144 months of imprisonment, to be followed by three years of supervised release. (*Id.* at 2–4); (Docket #105 at 1). Defendant has served about 65% of his term and has a projected release date of March 8, 2025. (Docket #101 at 3). This was Defendant's fifth felony conviction on a criminal record spanning over two decades. (Docket #48 at 12–16; #105 at 1). Prior to this crime, Defendant's convictions consisted of non-violent drug and gambling offenses. (Docket #48 at 12–16).

The Bureau of Prisons ("BOP") has labeled Defendant as "low" risk, with "minimum" violent risk. (Docket #101 at 13; #101-3). Notably, Defendant does not have a disciplinary record. While in prison, Defendant became certified to operate a forklift and plans to pursue employment in that field. (Docket #96 at 3). His work supervisor at FCI Milan has provided Defendant with a letter of recommendation for future employment, which highlights Defendant's work ethic. (Docket #101 at 13, #101-2). If granted

Page 2 of 11
Case 2:14-cr-00226-JPS   Filed 12/22/20   Page 2 of 11   Document 107

compassionate release, Defendant plans to live with his mother and stepfather in Illinois. (Docket #101 at 13).

## 2.2 FCI Milan

Defendant seeks compassionate release from FCI Milan due to COVID-19, which poses significant health risks to persons with Defendant's medical conditions. As of December 21, 2020, there are 64 active inmate COVID-19 cases and 17 active staff cases at the institution, and there have been three inmate deaths.[1] Additionally, 129 inmates and 55 staff have recovered from the virus at FCI Milan.[2]

## 3. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." Until recently, only the Bureau of Prisons could file a motion for reduction of a defendant's sentence. *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020). In 2018, Congress passed the First Step Act, establishing that a court may "grant compassionate release on a prisoner's own request, provided that the prisoner first allowed the Bureau to review the request and make a recommendation (or it let 30 days pass in silence)." *Id.* The statute further directs courts to consider whether (1) a reduction is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable," (2) "extraordinary and compelling reasons warrant such a reduction," and (3) "such a reduction is

---

[1]*See* Fed. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited December 21, 2020).

[2]*Id.*

consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Pursuant to its instructions from Congress, but prior to the passage of the First Step Act, the Sentencing Commission "promulgated a policy statement regarding compassionate release." *United States v. Mays*, No. 1:08-CR-00125-TWP-DML, 2020 WL 7239530, at *2 (S.D. Ind. Dec. 9, 2020) (citing United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13). In addition to the requirements found in § 3582(c)(1)(A), the policy statement instructs courts to determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

The Application Notes to the policy statement go on to define "extraordinary and compelling reasons" as including certain listed medical conditions (e.g., terminal illnesses), age-related declines in health, family circumstances, and "[o]ther [r]easons . . . [a]s determined by the Director of the Bureau of Prisons" (the "catchall" provision). U.S.S.G. § 1B1.13 cmt. n.1(A)–( D); *Gunn*, 2020 WL 6813995, at *2.

The Sentencing Commission has not revised the policy statement to reflect that prisoners may initiate motions for compassionate release under the First Step Act. *Gunn*, 2020 WL 6813995, at *2. The policy statement opens with, "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. Based on the foregoing, this circuit recently held that the policy statement is not applicable to prisoner-initiated motions for compassionate release. *Gunn*, 2020 WL 6813995, at *2. Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is

'consistent with' a nonexistent policy statement."). And a district court may "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 cmt. n.1(D)]." *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020).[3]

While judges reviewing prisoner-initiated motions are not formally constrained by the Sentencing Commission's guidelines, the existing policy statement "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Id.* Accordingly, in addition to determining whether the defendant has exhausted his administrative rights to appeal, this Court will evaluate prisoner-initiated motions for compassionate release "with due regard for the guidance provided in § 1B1.13" by deciding:

> (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

*Mays*, 2020 WL 7239530, at *3.

4. **ANALYSIS**

   4.1 **Exhaustion**

Before a court may grant a motion for compassionate release, the defendant must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf"

---

[3]Though decided prior to *Gunn*, the court in *Brown* accurately predicted that the sentencing guidelines do not prohibit courts from exercising discretion in determining which circumstances constitute "extraordinary and compelling." *Brown*, 2020 WL 4569289, at *4.

or at least 30 days must have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." *Gunn*, 2020 WL 6813995, at *1 (internal citations omitted).

In the present case, although the parties cite different dates for when Defendant filed his request with the warden of FCI Milan and when his request was denied, both parties agree that 30 days have passed, and Defendant has exhausted his administrative rights. (Docket #101 at 7; Docket #105 at 4).[4]

### 4.2 Extraordinary and Compelling Circumstances

"[T]he mere presence of COVID-19 in a particular prison (or in the BOP generally) cannot justify compassionate release." *United States v. Melgarejo*, No. 12-CR-20050-JES-DGB, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020), aff'd, No. 20-1802, 2020 WL 7230642 (7th Cir. Dec. 8, 2020). Prisoners need to demonstrate circumstances that create a heightened risk for them, such as the inability of the particular institution to control an outbreak combined with certain health conditions that place the prisoner "at significant risk of complications should he contract the virus." *Id.*

According to the Centers for Disease Control and Prevention ("CDC"), those with severe obesity, hypertension, and diabetes are or may be at "increased risk of severe illness from the virus that causes COVID-19."

---

[4] It appears that Defendant filed his request with the warden around July 18, 2020, and such request was denied on October 16, 2020. (Docket #105-1; #105-2).

Page 6 of 11
Case 2:14-cr-00226-JPS   Filed 12/22/20   Page 6 of 11   Document 107

CDC, *People with Certain Medical Conditions*.[5] Further, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.*

Defendant suffers from severe obesity, hypertension, and prediabetes. Defendant has demonstrated that he has multiple underlying health conditions that that place him "at significant risk of complications should he contract the virus." *Melgarejo*, 2020 WL 2395982, at *3; *see, e.g.*, *United States v. Moore*, No. CR 19-101 (KM), 2020 WL 4282747, at *3 (D.N.J. July 27, 2020) (finding a defendant's diagnoses of obesity (BMI of 40.8), chronic obstructive pulmonary disease, type II diabetes, and hypertension, in light of COIVD-19, created an "extraordinary and compelling" circumstance); *United States v. Porter*, No. 10-20075, 2020 WL 4590524, at *2 (E.D. Mich. July 14, 2020) ("[Defendant] suffers from obesity, hypertension, high cholesterol, and prediabetes. Such factors are sufficient to warrant release even in younger men.").

### 4.3 Danger to Any Other Person or the Community and § 3553(a) Factors

While even the Government admits that "[Defendant] has presented an 'extraordinary and compelling' reason [for compassionate release]," it correctly notes that "the analysis does not end there." (Docket #105 at 6). A court should also "determine that . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The factors listed in § 3142(g) include, among others thing, "the nature and circumstances of the offense charged," "the

---

[5] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 21, 2020).

weight of the evidence against the person," and "the history and characteristics of the person." 18 U.S.C. § 3142(g). Similarly, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A). These factors include, "the nature and circumstances of the offense and the history and characteristics of the defendant;" the sentence range established for the offense; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. *Id.* § 3553(a).

Defendant has a criminal history spanning two decades with convictions in 1996, 1999, 2000, 2008, 2009, and 2015. (Docket #48 at 13–16). As the sentencing court observed, Defendant, "over a long period of time, at least 15 years . . . has not learned an awful lot from the prior encounters with the criminal justice system." (Docket #63 at 26). The underlying conviction in Defendant's most recent case is a violent felony: armed robbery. Defendant notes that he was not the one who held the security officer to the ground with a pistol—it was his co-felon, Ferrell. But the loaded gun was placed in Defendant's hand by operation of law. And Defendant participated fully and knowingly in the crime. He was informed of the robbery plan; he took a bus across state lines; he was shown the gun on the drive to Community Financial; he agreed to enter the business with his armed co-felon; and he stole the money while relying on Ferrell to hold a gun to the security guard. He was not a "relatively low-level participant" as he argues. (Docket #101 at 2). The Court recognizes Defendant's good behavior and work ethic throughout his term in prison, but he still has over four years of his sentence left to serve.

Defendant argues that his sentence should be reduced because of the Supreme Court's opinion in *Dean v. United States*, 137 S. Ct. 1170 (2017). In that case, the Court held that sentencing courts may consider the mandatory minimum sentence that they are required to impose under § 924(c) when determining the appropriate sentence for the predicate offense. *Id.* at 1178 ("a sentencing court [may] consider[] a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense."). Because he was convicted before *Dean*, his sentencing court (this Court) did not factor in the "harshness" of the mandatory sentence of his § 924(c) conviction. Defendant argues that this Court may follow *Dean* as it decides his present motion for compassionate release.

When this Court sentenced Defendant, it made explicitly clear that it understood that one of Defendant's charges carried an advisory sentence recommendation and the § 924 charge carried a required minimum. (Docket #63 at 30, 32). This Court considered Defendant's background, role in the offense, and criminal history score; it also considered the weight of the evidence, the seriousness of the crime, and the goals of the criminal justice system. (*Id.* at 24–31) ("Each defendant in Judge Stadtmueller's court is sentenced individually because each individual defendant comes from a different background, has a different criminal history score, different role in the offense."). This case is not like *Dean* in which the sentencing court expressed reservation and concern in imposing a harsh sentence but was "required to disregard Dean's [§ 924(c)] mandatory minimum when determining the appropriate sentences for Dean's other counts of conviction." *Dean*, 137 S. Ct. at 1175 (discussing the reasoning of the sentencing court); *see also Brown*, 2020 WL 4569289, at *4 (granting a defendant's motion for compassionate release where the court found that

"[i]f Brown had been sentenced today rather than in 2002, there is no question that he would have received 408 months' imprisonment, rather than 624 months.").[6] In 2015, this Court confidently concluded that the 144-month sentence given to Defendant was "the only fair, just, and reasonable sentence." (*Id.* at 30). The Court's analysis of the sentencing factors, even assuming it is appropriate to consider the effect of the § 924(c) mandatory sentence under *Dean* in compassionate release cases,[7] has not changed.

Finally, Defendant presents his release plan to move home with his mother and stepfather and to seek employment. The Court is reminded that "before Cook made the terrible decision to answer a relative's call for help with a robbery, Cook had a good job, a history of stable employment, and was known as a family man." (Docket #101 at 1). The Court is unconvinced

---

[6]This case dealt with a change to § 924(c) that disallowed courts from enhancing § 924(c) convictions when multiple convictions are charged under the same indictment (i.e., when § 924(c) convictions are "stacked"). *Brown*, 2020 WL 4569289, at *1–3. However, the court compared such considerations to *Dean*, which, in a similar vein, allowed a sentencing court to approach § 924(c) predicate offenses less harshly. *Id.* at *4.

[7]The parties express conflicting opinions about whether it is appropriate to consider the effect of a § 924(c) mandatory sentence in compassionate release motions in cases where a defendant was sentenced prior to *Dean*. Other district courts have wrestled with this question. *See, e.g., United States v. Bond*, No. LA CR94-00563 JAK, 2020 WL 4340257, at *4 (C.D. Cal. Feb. 25, 2020). The Seventh Circuit, like the Ninth Circuit as discussed in *Bond*, has decided that *Dean* may not be retroactively applied to *habeas corpus* petitions, *Worman v. Entzel*, 953 F.3d 1004, 1011 (7th Cir. 2020), but there is no guidance as to whether a court may look to *Dean* in compassionate release motions. *But cf. Brown*, 2020 WL 4569289, at *3–4 (considering whether a defendant's sentence would have been lower had the § 924(c) amendment disallowing stacked sentences been in effect and had *Dean* been decided when a defendant was sentenced). Fortunately, this Court need not decide this question today. Whether or not it considers the § 924(c) mandatory minimum as allowed under *Dean*, the Court finds that Defendant's sentence will remain unchanged.

that Defendant will be returning to his community under better, let alone equal, circumstances to the ones under which he had repeatedly decided to break the law.

5.  **CONCLUSION**

After giving much consideration to the § 3553(a) factors, the Court denies Defendant's motion for compassionate release, (Docket #101), and denies his motion to appoint counsel, (Docket #96), as moot. The Court grants the parties' motions to seal certain documents as they contain medical records and refer to documents previously filed under seal. (Docket #102, #104).

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release, (Docket #101), be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's original motion for appointment of counsel and for compassionate release, (Docket #96), be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that both parties' motions to seal certain documents, (Docket #102, #104), be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge